IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARTER MANUFACTURING COMPANY, INC. <br> 12121 Corporate Parkway <br> Mequon, WI, 53092-3332, <br><br> Plaintiff, <br><br> v. <br><br> RYAN KNACK <br> 50 Public Square Apt. 823 <br> Cleveland, OH 44113, <br><br> Defendant. | : : : : : : : : : : : : : : : : | CIVIL ACTION NO. <br><br> JUDGE <br><br><br><br><br><br><br> **JURY DEMAND ENDORSED HEREON** |

**VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE AND OTHER RELIEF**

Plaintiff, Charter Manufacturing Company, Inc. ("Charter"), by and through its attorneys, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., hereby brings the following complaint for immediate injunctive relief and damages against Defendant Ryan Knack ("Knack") and, in support thereof, avers as follows:

**INTRODUCTION**

This action arises from Defendant Knack's willful theft of trade secrets and other confidential and proprietary information that belongs to Charter and his unlawful conversion of Charter's confidential and proprietary business information. To prevent irreparable harm from this course of wrongdoing, Charter seeks a temporary restraining order, seizure order, preliminary and permanent injunctive relief, and money damages.

After the involuntary separation of his employment, Knack gained unauthorized entry to Charter's Cuyahoga Heights, Ohio, location where he then cherry-picked certain critical IT files and information from his work-issued laptop and copied them onto a USB drive before returning the laptop to Charter. He then unlawfully removed the USB drive with the files from the premises. The information Knack took is valuable and can be used to harm or sabotage Charter's operations, the safety of Charter's employees, and Charter's business generally. Likewise, the information has potential value for sale by Knack on a black market, and therefore, it is important that the IT information be seized from Knack and returned to Charter immediately.

## PARTIES

1. Charter is a Wisconsin Corporation with its registered office and principal place of business at 12121 Corporate Parkway, Mequon, Wisconsin, 53092-3332.

2. Knack is an adult individual residing at 50 Public Square, Apartment 823, Cleveland, Ohio 44113.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, for claims brought under The Defend Trade Secrets Act (18 U.S.C. § 1831, *et seq.*). Further, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) for all remaining claims because they arise out of the same common nucleus of operative facts as Charter's federal law claims.

4. Venue is proper in this Court as it is the jurisdiction in which Defendant Knack resides and in which Knack engaged in the conduct giving rise to Charter's causes of action.

## FACTUAL BACKGROUND

5. Charter is a privately held family of market leading metals manufacturing businesses, which includes four divisions – Charter Steel, Charter Wire, Charter Dura-Bar and Charter Aarrowcast. Charter operates in multiple states, including Ohio.

6. Charter maintains a network infrastructure to ensure availability and stability of its internet and communication networks.

7. Charter employs personnel to design, install, administer, and optimize business networks and related components to achieve high performance in the areas of data, video, and voice communications.

8. Charter management works closely with its network analysts to develop solutions and direct activities of network administrators in the implementation and daily administration of business and manufacturing networks to support its business' global telecommunications footprint.

9. Charter hired Knack as a full time hybrid/remote Network Infrastructure Analyst on February 14, 2022.

10. As a Network Infrastructure Analyst, Knack's job duties included participation in the design and implementation of in-house and/or outsourced network environments for managing and maintaining global communications at a high level of reliability and availability, participating in key process improvement initiatives as they relate to the WAN, LAN, and WLAN environments, and coordinating and collaborating with Network Engineers and Analysts to ensure availability, reliability, and scalability of corporate networks to meet business demands.

11. Upon his acceptance of employment with Charter, Knack acknowledged receipt of Charter's Employee Handbook which contains, among other things, Charter's Information Technology Acceptable Use Policy ("IT Policy"). A true and accurate copy of the Employee Handbook which Knack acknowledged receipt of is attached hereto as Exhibit A, at pp. 59-63.

12. The IT Policy states in relevant part that:

- The information stored on electronic and computing devices is the sole property of Charter and the security of equipment, software and data files are the responsibility of each employee.

- It is the responsibility of each employee to take adequate measures to help ensure against theft or misuse of Charter's confidential and proprietary business information.

- Copying software, licensing or documentation without IT authorization is prohibited.

- Company computer systems are made available for business purposes only.

- Charter IT issues usernames and initial passwords to employees based on the authorization given by the employee's manager.

- System level and user level passwords must comply with Charter's User Password Use Policy.

*See id.* at pp. 59-60.

13. An employee may "access, use or share business proprietary or confidential information only to the extent it is authorized and necessary to fulfill [his] assigned job duties.

Accessing data, a server, or an account for any purpose other than conducting business, even if you have authorized access, is prohibited." *Id*. at p. 61.

14. Charter's IT Policy also requires that its business proprietary and confidential information must be protected against theft and unauthorized use and requires employees to promptly report the theft, loss or unauthorized disclosure of business proprietary or confidential information to the IT department.

15. On November 14, 2023, Knack's supervisor, Les Taylor, issued a Letter of Expectations to Knack documenting Knack's failure to follow change control processes which led to temporary IT shutdowns at three of Charter's steel locations and further put the company at risk. A true and accurate copy of the November 14, 2023 Letter of Expectations is attached hereto as Exhibit B.

16. Less than two months later, on January 4, 2024, Knack again failed to follow change control processes, causing employees at Charter's Fostoria, Ohio, location to lose access to Outlook, Teams and other critical internet services for a period of time.

17. On January 7, 2024, Knack copied certain confidential and proprietary IT security certificate files onto his personal AirBook device from his business device, which was not authorized or approved by Charter, in violation of the IT Policy.

18. On January 15, 2024, Charter terminated Knack's employment for misconduct because Knack failed to follow Charter's Change Control process.

19. Consistent with Charter's policies, terminated employees in Knack's position are not permitted to access Charter locations after termination.

20. Accordingly, during Knack's termination meeting, Charter instructed Knack to coordinate with Les Taylor to set a time to meet at the security guard shack of Charter's Cuyahoga Heights, Ohio, location to return Knack's Charter equipment and obtain his personal items.

21. Knack did not coordinate a time to meet with Les Taylor.

22. Instead, on January 23, 2024, Knack surreptitiously gained unauthorized access to Charter's premises at the Cuyahoga Heights, Ohio, location by, upon information and belief, misrepresenting his status as an employee to Charter's security personnel.

23. While onsite on January 23, 2024, Knack returned his laptop computer to Charter but also logged into a local admin account from his former work computer to access multiple key proprietary and confidential IT files containing sensitive information belonging to Charter onto a personal USB device.

24. The files Knack copied include, among other things, networking device configurations and various drawings of Charter's network topology.

25. There is uniqueness and value to Charter's network to support the business and infrastructure that could cause monetary damages to Charter if disclosed to a third party and also could be used to cause shutdowns or impact safety at Charter's plant locations.

## COUNT ONE

**MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE DEFEND TRADE SECRETS ACT – 18 U.S.C. § 1831, *et seq.***

26. Charter incorporates all of the above allegations as if fully set forth herein.

27. Charter possesses certain confidential, proprietary, and trade secret information, including Charter's customer and financial information, inventions, patents, product and equipment specifications, designs, computer data, as well as other information technology,

software, and hardware. Such information constitutes a "trade secret" under 18 U.S.C. § 1831, *et seq*.

28. Charter's trade secret information is used in, or intended for use in, interstate or foreign commerce.

29. Charter's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, the public or other persons who could obtain economic value from the information.

30. Charter has taken reasonable steps to protect its trade secrets from disclosure, including the trade secrets information possessed and/or stolen by Knack.

31. Charter's reasonable steps to protect its trade secrets from disclosure include, among other things, requiring Knack to sign acknowledge the IT Policy and Employee Handbook. Moreover, Charter restricts access to and password protects its trade secret information, only providing access to managerial-level employees.

32. Knack had access to and knowledge of Charter's trade secrets and sensitive IT information.

33. Both during and after his employment with Charter, Knack had a duty to maintain the secrecy of Charter's trade secrets and to not disclose them to third parties.

34. Both during and after his employment with Charter, Knack misappropriated Charter's trade secrets by using improper means to acquire Charter's trade secrets by stealing the information without Charter's knowledge or consent in breach of the IT Policy and his duties owed to Charter.

35. Knack did so with knowledge that he acquired the trade secrets under circumstances giving rise to a duty to maintain their secrecy and used improper means to acquire the trade secrets.

36. As a result of Knack's misappropriation of Charter's trade secrets, Charter has suffered and continues to suffer irreparable harm as well as monetary damages in an amount to be proven at trial.

37. Knack's conduct was willful, knowing, intentional, and malicious, entitling Charter to recover punitive damages under 18 U.S.C. § 1836(b)(3)(C).

38. Knack willfully and maliciously misappropriated Charter's confidential, proprietary, and trade secret information, entitling Charter to an award of reasonable attorneys' fees under 18 U.S.C. § 1836(b)(3)(D).

## COUNT TWO

**MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF OHIO REVISED CODE § 1333.61, *et seq.***

39. Charter incorporates all of the above allegations as if fully set forth herein.

40. Charter possesses certain confidential, proprietary, and trade secret information, including Charter's customer and financial information, marketing plans, inventions, patents, product and equipment specifications, designs, computer data, as well as other information technology, software, and hardware. Such information constitutes a "trade secret" under Ohio Revised Code § 1333.61, *et seq.*

41. Charter's trade secret information is used in, or intended for use in, interstate or foreign commerce.

42. Charter's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, the public or other persons who could obtain economic value from the information.

43. Charter has taken reasonable steps to protect its trade secrets from disclosure, including the trade secrets information possessed and/or stolen by Knack.

44. Charter's reasonable steps to protect its trade secrets from disclosure include, among other things, requiring Knack to acknowledge Charter's IT Policy and Employee Handbook. Moreover, Charter restricts access to and password protects its trade secret information, only providing access to managerial-level employees.

45. Knack had access to and knowledge of Charter's trade secrets.

46. Both during and after his employment with Charter, Knack had a duty to maintain the secrecy of Charter's trade secrets and to not disclose them to third parties.

47. Both during and after his employment with Charter, Knack misappropriated Charter's trade secrets by using improper means to acquire Charter's trade secrets by stealing the information without Charter's knowledge or consent in breach of the IT Policy and his duties owed to Charter.

48. Knack did so with knowledge that he acquired the trade secrets under circumstances giving rise to a duty to maintain their secrecy and used improper means to acquire the trade secrets.

49. As a result of Knack's misappropriation of Charter's trade secrets, Charter has suffered and continues to suffer irreparable harm, as well as monetary damages in an amount to be proven at trial.

50. Knack's conduct was willful, knowing, intentional, and malicious, entitling Charter to recover punitive or exemplary damages in an amount not to exceed three times any award made under Ohio Rev. Code § 1333.63(A).

51. Knack willfully and maliciously misappropriated Charter's confidential, proprietary, and trade secret information, entitling Charter to an award of reasonable attorneys' fees under Ohio Rev. Code § 1333.64.

## COUNT THREE

## UNJUST ENRICHMENT

52. Charter incorporates all of the above allegations as if fully set forth herein.

53. Knack has received and used Charter's confidential, proprietary, and trade secret information and has been unjustly enriched by acquiring such information.

54. Knack is are aware of the benefit he has received.

55. Under the circumstances, it would be unjust to allow Knack to retain the benefits he received without payment to Charter.

56. Knack has been unjustly enriched, and continue to be unjustly enriched in an amount to be proven at trial.

## COUNT FOUR

## CONVERSION

57. Charter incorporates all of the above allegations as if fully set forth herein.

58. At all relevant times, Charter was and remains the owner of the confidential, proprietary, trade secret information which Knack has willfully taken, used, misappropriated, and disclosed.

59. Knack converted, and/or will continue to convert Charter's property, including the confidential, proprietary, trade secret information, for his own use and financial gain without authorization or consent from Charter and in violation of the IT Policy and applicable laws.

60. As a direct and proximate result of Knack's conversion of Charter's property, Charter has suffered, is suffering, and continues to suffer irreparable harm, as well as monetary damages in an amount to be proven at trial.

61. Knack' unlawful conduct was willful, knowing, intentional, and malicious, entitling Charter to recovery punitive damages.

## COUNT FIVE

## INJUNCTIVE RELIEF

62. Charter incorporates all of the above allegations as if fully set forth herein.

63. Charter is being substantially and irreparably injured by Knack's misappropriation of Charter's proprietary, confidential, and trade secret information and Knack's conversion of Charter's property, which have resulted in Knack being unjustly enriched. Charter is unable to determine with specificity the extent to which Knack continues to misappropriate Charter's proprietary, confidential, and trade secret information.

64. Charter is likely to succeed on the merits in this matter in establishing that Knack misappropriated Charter's proprietary, confidential, and trade secret information and in establishing that Knack unlawfully converted Charter's property and was unjustly enriched.

65. Issuance of an injunction would not cause substantial harm to third parties and the harm it would cause to Knack is far outweighed by the harm that would continue to befall Charter in the absence of an injunction.

66. The public interest weighs in favor of protecting proprietary and confidential trade secrets like the ones at issue here in order to protect the legitimate business interests of Charter.

**WHEREFORE**, Charter prays that the Court enter judgment in its favor providing the following relief:

A. An order enjoining Knack from misappropriating Charter's confidential, proprietary, and trade secret information and requiring Knack to dispose of any data, documents, or files containing such information;

B. Entering an injunction requiring Knack to promptly return to Charter any and all property of Charter in his custody, possession, or control and/or seizing such information from him;

C. Enjoining Knack from using, disclosing, transferring or selling Charter's trade secrets and proprietary and confidential information.

D. Awarding compensatory damages against Knack in an amount deemed appropriate by the Court;

E. Awarding punitive damages against Knack;

F. Awarding any and all statutory remedies against Knack;

G. Awarding an order of disgorgement against Knack;

H. Awarding Charter's attorneys' fees and costs incurred in this action;

I. Awarding pre-judgment and post-judgment interest;

J. Awarding Charter such other and further legal or equitable relief as the Court deems just and proper.

**WHEREFORE**, Charter respectfully requests this Court to enter judgment against Knack for injunctive relief, damages, interest, attorneys' fees and costs, and such other and further relief as this Court deems just and proper.

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

Respectfully submitted,

/s/ Rose Marie L. Fiore
Rebecca J. Bennett (0069566)
Rose Marie L. Fiore (0065243)
127 Public Square, Suite 4100
Cleveland, OH  44114
216-241-6100
216-357-4733 (FAX)
rebecca.bennett@ogletree.com
rosemarie.fiore@ogletree.com

-and-

Samuel N. Lillard (#0040571)
Jantzen D. Mace (#0099005)
 88 E Broad Street, Suite 2025
Columbus, Ohio 43215
Telephone:  (614) 494-0420
Fax:  (614) 633-1455
sam.lillard@ogletree.com
jantzen.mace@ogletree.com

*Attorneys for Charter Manufacturing Company, Inc.*

## JURY DEMAND

Charter hereby demands a trial by jury of all issues triable of right by jury.

                                                          */s/Rose Marie L. Fiore*
                                                          Rose Marie L. Fiore (#0065243)

## **VERIFICATION**

I, Adam Krause, am employed by Charter Manufacturing Company, Inc. as its Information Technology Security Architect. I hereby verify that the facts set forth in the foregoing Verified Complaint for injunctive relief and its exhibits are true and correct to the best of my knowledge, information and belief.

_____
Adam Krause

State of Wisconsin

County of Ozaukee

Sworn to before me and subscribed in my presence, this __8__ day of February 2024.

_____
Notary Public

Anna M. Martiny
Notary Public
My Commission Expires 09/11/2026
State of Wisconsin